May it please the Court, I'm representing Joshua Hernandez, my name is William Capriola. In the District Court opinion, Judge Breyer seems to agree that it would have made a difference if trial counsel had found all the records that I found showing that my client was insane at the time of the crimes. Petitioner's entire case rose and fell on the insanity issue. It was his only defense. That's accurate. He also says it seems quite possible that these records would have altered the result of this trial. I think it's pretty much indisputable that they would have altered the result of the trial. Here they had three experts who testified, well two of them testified that he was insane at the time, classically insane. The prosecution presented no experts, nothing, and only poked holes in the expert's opinion. He was a very good prosecutor and a very good arguer and was able to convince the jury that he was malingering because the only evidence they had was whatever came out of the defendant's own mouth because they never bothered getting any records. Counsel, once again, this is a state habeas and our focus on the case, of course, is more narrow. What precisely is contrary to the requirements of Strickland? What did the state court do that violated Strickland here? What the state court did was they, it was affirmed in basically a postcard denial by the California Supreme Court. So we have to basically, what Richter says, you look to see whether they're on a reasonable basis. And the district court said, well, there's no clearly established federal law here. The district court judge looks past, our argument here as to AEDPA is that Strickland is the law that needs to be followed. That's it. But there were four pieces of evidence. There was the Tascadero, there was the Alaska confinement, the social security determination, and the San Antonio hospital. And all of that came in. So where is the ineffective assistance? None of that came in. Well, I mean, all right, all of it was identified. No, no, no, actually most of it was not identified even by trial counsel. Trial counsel did nothing but leave the case up to the experts. Basically, the district court here found and the attorney general here is arguing that in a case, an insanity case where your only defense is not guilty by reason of insanity, the attorney has no responsibility to do anything because the United States Supreme Court has never. Well, counsel, that's not quite, I'm sorry, it's not quite accurate to say counsel did nothing here. Counsel acquired expert testimony. Counsel actually succeeded in having this person committed and not even tried for some period of time. So apparently was successful, at least initially, in pursuing that there was mental illness. And, you know, the cases that are in your briefs tend to be cases where nobody even looked at an insanity defense or got any experts. And really this is a matter of degree, it seems to me. Counsel did quite a bit, and the question is whether the quite a bit was so deficient that no reasonable jurist could conclude that it was sufficient. I think you can because of the result of the case. Basically the way it reads is that you can leave, and a defense attorney can leave his entire case in an insanity case up to the experts. Well, in a sense, isn't that true? I mean, if you're not a psychiatrist yourself, you hire a respected psychiatrist whose bona fides are not questioned here, and you say, help me out here, here's what I'm giving you. Isn't it a little bit up to the expert to say, well, I need more? Is there anything more? I totally agree with you. But see, in this case, what happens is that in a case like this where the guy is definitely psychotic, nobody at me, the experts said this is a no-brainer. Basically the guy walks in, this guy is insane. But they hired three experts. They gave the experts the Tascadero discharge summary, the police reports, and the weird writings of your client. And I guess I'm not sure why it would be impossible for a reasonable jurist, which we have to say the California courts were, to say that that was enough to meet the performance bar. If I could just explain this quickly, if you leave it up to the experts, now the experts can make a determination, because they're making a medical determination, a psychological determination, this person was insane at the time. Now that isn't necessarily going to convince a jury when you have a prosecutor in there who's saying, well, they just based it all on what the defendant said. They didn't bother getting into the records. And the jury bought this. Now, your job as a defense attorney is not just to get two experts to say that, and the experts can make that determination maybe in minutes. You know, they said this is a no-brainer. But you're going to want to say, well, I have a prosecutor here. He's not calling any experts. I have experts. What's he going to do? He is basically going to say my client was faking. So you have to, as an attorney, you have to refute that. And how do you do that? You show that. There are a number of ways to do it. One thing is you have your witnesses say, you know, part of my job is to figure out who's faking, and I think he's not. They did that. But yet still, they were able to believe the prosecutor because he was really good. What happened after this case is when my client was in San Quentin, they forgot to give him his medication, and he plucked out both of his eyes. He is blind. This guy is definitely insane. There is no question about this. And this prosecutor, if you read his closing argument, I'm sorry, all he does is say that these experts basically fell for it. They fell for it. And he was really good, and the defense attorney was really bad, even though, yeah, he hired the experts. But against this guy and this jury, these crimes are bizarre. The jury, you know, juries are normal people. Anybody who wants this guy to go to jail, he's a lunatic. You know, he walks into a house, and he starts knifing people who he doesn't even know. Anyway, the crimes are bizarre. He's bizarre. And the prosecutor was able to convince the jury that this guy should go to prison. Where he ends up, you know, it was recorded on videotape. It's like one of the most horrific things ever, what happened in this case. But they were successful here. And so the question for EDPA purposes, basically Justice Breyer seemed to agree that what the attorney did here, he said, this is ridiculous. However, for EDPA purposes, I don't find a case on point. So I think the real issue in this court is, is Strickland good enough? And I think it is, because an IAC, an ineffective assistance of counsel claim, is always a fact-bound inquiry. There's always going to be a different case. You're never going to find a case exactly on point. And there have even been cases, there is actually an Eighth Circuit case cited in one of my briefs, which basically says, yeah, in an insanity case, we look to capital cases, and I can give you the site if you like. We look to capital cases, and by analogy, because basically they're the same thing. When you don't investigate somebody's background, it's ineffective, even in a cap, even if you put experts on the stand. And so you look to do, in a Strickland analysis, and what all the cases say, and it's very basic, is that either you have to do a reasonable investigation, or you've got to make a reasonable, have a reasonable explanation as to why you didn't do it, or you have to, I'm sorry. Well, just take the Social Security disability records. Those were referred to by one of the witnesses, were they not? I think they were, yeah. But really, there are no Social Security records. They referred to them, but they didn't say it was because of mental illness that he was getting. Okay, but we're focusing on the ineffective assistance here. And as I look at the record, and I want you to correct me if I'm wrong, defense counsel was aware of the Social Security determination. He was, yeah. So what's your argument there? Well, because if he would have produced even one of these records, the prosecutor's entire argument is Which records? The Social Security records, the Alaska records. But they were in evidence, or at least they were referred to. They were referred to, were they not? They were referred to the fact that he's getting Social Security, and they referred to the fact that in Alaska Based on disability. No, not based on disability. Basically, yeah, maybe based on disability, but not because of mental incompetence. Not because of mental reasons. The Social Security records are, they lost the entire file by the time I got the case, so I don't know when they did, but there is none. But the other records, the prosecutor's argument here was that the defense showed nothing, that he didn't make this up while he was found incompetent to stand trial in this case. He was incompetent for eight months in this case, and the prosecutor's theory, and this is what he tells the jury, he saw a video about insanity defense, and he comes up with this whole thing. And if he would have produced one record saying that he's been schizophrenic since age 14, that would have blown it out of the water. Thank you, counsel. Your time has expired. We'll hear from the State. Thank you, Your Honors, and may it please the Court. Rene Chacon for Respondent Wharton. We asked the Court to affirm the district court. My opposing counsel misspoke. He claims the pivotal question is whether Strickland is good enough. No, Richter tells us that the pivotal question is whether the state court's application of Strickland was unreasonable. Well, it seems to me quite a close case. If we didn't have the sort of double deference here, it would seem to me that you'd be in a tough spot, because this person is really obviously crazy, and counsel should have been prepared to deal with a claim of recent fabrication. But on the other hand, we have this double deference. So what is the best case scenario for this being an adequate performance on the part of trial counsel? Well, it's clear, Dr. Soper, there were two defense, three defense witnesses presented, two psychologists, one psychiatrist, Dr. Soper, with 20-plus years of experience. He testified at trial when pressed by the prosecutor that he didn't need the records. He had enough. It was so obvious, it was staring him in the face, that this person was insane today and he opined was insane years earlier when the underlying crimes were committed. A second defense psychologist who interviewed the defendant for 90 minutes had the defendant's recent writings, most recent writings that occurred near the time of the underlying crimes, and had him undergo a series of psychological tests to at least opine that he also believed that the test reported that the defendant was insane at the time of the crimes. So then when the prosecutor says this defendant just pulled the wool over their eyes and made all this up recently, why wasn't counsel deficient for failing to bring up the childhood records showing that this was by no means a recent phenomenon or a recent fabrication? Well, attacks on whether mental health professionals have considered malingering, that's nothing new. It's a standard process. Yes, it is. But there was material here that could contradict the malingering. There's no question. There's no question. And it wasn't brought up. And that's my problem. Counsel could have done more. Absolutely. Counsel could have done more. That's not what Strickland and Richter require. Counsel made a strategic decision to rely on his experts. Was there a strategic decision not to go look at his past record? Petitioner did not obtain a declaration from trial counsel. The best we can do is take Dr. Soper's testimony, the two defense witnesses' testimonies, who said they didn't need it anymore. They had enough. But what do we know about what they did have? I mentioned at the beginning that there were four sets of records, the Tascadero, Alaska, the Social Security Disability Determination, and San Antonio. Is there any indication that these materials were made available or known to the witnesses that the defendant himself self-reported, well, a Tascadero was fresh. He had recently undergone a series of before trial, mid-trial. Was a Tascadero, were the Tascadero records available to any of the witnesses? Parts of a Tascadero discharge summary. Right. They got the discharge summary. That's correct. And inferentially, there was more from a Tascadero available should either party have gotten it. So your argument is that the witness was knowledgeable about the discharge, and there was no requirement that he has to go behind that. If the witness knew about Alaska, knew about the other hospital placement, I cannot say that he knew about the disability reports. Yeah, the declarations from Dr. Soper and from, well, I forget who else, but the one from Dr. Soper suggests that he did not have these materials except for the discharge summary, and that they would have had a big effect on his ability to discuss the mental state at the time of the crime. That's correct, but he knew about them. He knew about the prior placements, and he didn't ask counsel to obtain them. He explains on cross-examination he didn't think he needed them. He didn't want to waste his own time. He didn't want to waste county funds. That's his testimony on cross. But none of that has much to do with how counsel responded to the claim of recent fabrication, because it seems to me that even if Dr. Soper didn't need any more, the jury may have needed more by saying, okay, well, here's something from when this person was 14 years old that shows the same thing, so it isn't made up. These materials at best would have corroborated both defense experts' opinions that this defendant was not malingering. It seems to be the basis for the jury's verdict. Well, the credibility of defense psychiatrists was before them and was attacked by the prosecutor, yes. Also, what they had before them was the defendant's own goal-oriented acts, were also the writings that defense psychiatrists claimed showed unequivocally that this man was insane at the time of the attacks. And they could decide for themselves whether these defense experts who had access to the defendant two years after the fact were correct or not. At bottom, the defendant's own goal-oriented activities... What does that mean, goal-oriented activities? What are you trying to say? I'm saying that he wasn't insane, that he wasn't acting as a result of a psychosis, that he was criminally responsible for his acts, because there was a basis, there was a rational basis for his acts, for the attacks on the defendants, on the victims, that he wasn't insane at the time he committed the acts. That's what I'm saying. What was that rational basis? What was his goal that he was trying to further? Well, there were women who were attacked. Underlying the prosecutor's point was that there was some sort of sexual goal at bottom of his mind as a result that produced the attacks. Nothing new, common sense, a commonsensical argument. Here, the petitioner has pointed to no clearly established federal law that would have required counsel to seek out information that was not needed by his defense experts. And this was a guilt-phase determination. There's a my opponent's arguments all, rather, cases all come from death penalty cases that require more of counsel. This is a guilt-phase determination, and the U.S. Supreme Court has not directed more is required as a matter of law. I thought he was choking one of the victims. That's correct, Your Honor. That was goal-oriented? Yes. Unless the Court, unless I can answer more questions from the panel. No further questions. Thank you, Counsel.
judges: Schroeder, O'scannlain, Graber